NEWMAN )
v. ) APPEALS.
McNAIRY )

GRUNDY & COOKE, for the appellant,

WHITESIDE, BECK & HAYES, for the appellee,

WHITE, J. delivered the following opinion of the court:—

This was an action of assault and battery brought by Newman against McNairy. The defendant pleaded *son assault demesne,* and upon the trial he offered evidence that Newman had, some days before the battery, spoken slanderous words to him, and used abusive and disrespectful epithets of him in his character of physician, of which he was informed on the day before the battery. This evidence was objected to, but the objection was overruled on the ground that such evidence might be received in mitigation of damages.

The correctness of this opinion of the inferior court is here called in question; because, it is contended, no evidence of provoking language ought to have been received, except of such words as were used at, and immediately before, the time of the quarrel. Esp. N. P. 317, and the case of Robertson v. Dunn, decided by the court of appeals of Kentucky. And further, that at all events the evidence was improperly received under the plea of *son assault demesne.*

It appears, singular that so little is to be found upon this subject in the books. The case from Kentucky, is in some respects, different from this—in some others there

is a strong resemblance; and the general doctrine laid down by the court has a strong tendency to show that testimony of this kind ought, in the opinion of that court, to be confined to very narrow limits.

I should much regret a decision that would countenance turbulent and violent passions in disturbing the peace and harmony of society; and I should equally regret one on so limited a scale as to view men as angels while I am conscious they are nothing but men.

The doctrine insisted upon by the appellant's counsel I can see much reason in, when applied to public prosecutions designed to compel an observance of the public peace, but I acknowledge I cannot see it in so strong a light when it is a question between A & B, how much money the one shall receive off the other as a compensation not only for an actual injury, but likewise for the wound inflicted upon the feelings of the individual; in cases of that kind, it does seem to me that an attack upon B without cause, in the pursuit of his ordinary business, and when he had not interferred in the concerns of others, ought to be compensated with more liberality than an attack upon his person pretty soon after the assailant was informed that B had been engaged in the business of detraction, and had, perhaps, from malicious motives, been lacerating his character so as to leave it bleeding at every pore. I admit it would be more dignified in the injured individual to resort to the laws of his country for redress, if the word used entitled him to any, and if they did not, to bear the injury with God-like patience; but we must take human nature as it is, and make the most of it. We must not expect from man a course inconsistent with his nature; and we ought to bear with his frailties and imperfections, as far as is consistent with the true interest of society. The tongues of men, as well

90

as their hands, ought to be restrained within reasonable bounds—and if one will, in the absence of another, endeavor to undermine and destroy his reputation, and that other should on the first opportunity after being informed of it, so far forget the respect due to the laws as to chastise him for it, I cannot say that the person thus chastised ought to have more than a mere compensation for the injury done him. As to the violence done to his feelings, I would let him bear with it, without any other compensation than that which he would find from the reflection that he had done as great, perhaps a greater, violence with his tongue, to the feelings of a fellow being, whose foibles and weaknesses it was not his duty to expose. When a peaceful and orderly citizen is assailed, compensate him in vindictive damages—redress the injury to his feelings, as well as the actual injury to his person; but if a busied man in other mens matters, one who has been eloquent in describing the fancied faults of another, is, by that other, on the first opportunity, chastised in a reasonable manner, I would calculate, with as much correctness as possible, the dollars and cents to which he was entitled for the injury, leaving his sensibility out of the question, and this upon the broad principle, that no man should profit by a wrong produced by himself. The man injured might give previous threats in evidence to aggravate—why not suffer the one sued to give that which was offered here, to mitigate. This might sometimes surprise with unexpected evidence, but a new trial, when necessary, would prevent an injury on that ground. Let the jury know that acts done, and the cause which produced them and there is no danger but they will generally decide correctly as to the measure of compensation.

*(1)* I can see no reason why this matter, which is only in mitigation, may not be received under the plea of *son assault demesne,* as well as not guilty—it might have been received on executing a writ of inquiry.

The judgment must be affirmed.